# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BMO Financial Corporation, | § § § | |
| *Plaintiff/Non-Party,* | § § | No. 12-CV-7178 |
| *v.* | § § § | (Northern District of Illinois) |
| Zions Bancorporation, *et al.* | § § § | |
| *Defendants.* | § | |
| | | |
| SECURE AXCESS, L.L.C., | § § § § | |
| *Plaintiff*, | § § | No. 6:10-CV-670 (LED) |
| *v.* | § § § | (Eastern District of Texas) |
| BANK OF AMERICA CORP., *et al.* | § § | |
| *Defendants*. | | |

### NON-PARTY BMO FINANCIAL CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA IN A CIVIL ACTION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party BMO Financial Corporation ("BMO") respectfully submits this memorandum in support of its Motion to Quash the Subpoena of Defendants Zions Bancorporation, Zions FNB, and Amergy Bank N.A. (collectively, "Zions") issued in the above-captioned matter and served on July 24, 2012 (the "Zions Subpoena") by the United States District Court for the Northern District of Illinois.

**I.     INTRODUCTION**

By its Subpoena, Defendant Zions seeks broad, sweeping, and invasive discovery into the scope and detailed operation of BMO's online banking websites, including confidential and proprietary information on the types of technologies used and the number of banking customers. Despite BMO's written objections to the Subpoena, Zions does not advance a single reason why BMO's confidential business practices are relevant to a patent infringement suit to which BMO is no longer a party. *See National Claims Management Corp. v. Mercedes-Benz of North America*, No. 97-C-6293, 1998 U.S. Dist. LEXIS 492 at *4 (June 15, 1998) (quashing subpoena requesting non-party's sensitive commercial information irrelevant to the moving party's case).

In addition, as if seeking discovery on the entire scope of BMO's online banking services was not enough, Zions requests both attorney-client privileged settlement negotiations and expert research, reports and analysis relating to the May 9, 2012 Settlement, Release and License Agreement ("Settlement Agreement") entered between BMO and Plaintiff Secure Axcess, LLC ("Secure Axcess"). As an initial matter, this Settlement Agreement is not the subject matter of the lawsuit between Zions, and Secure Axcess and Zions has not shown how any information leading up to it is otherwise relevant. Moreover, even if it were somehow relevant, the Settlement Agreement was ***already produced*** to Zions by Plaintiff Secure Axcess, and the Agreement "speaks for itself." Nothing that BMO can produce in response to Zion's Subpoena through documents or deposition testimony will change the written terms of that Agreement. As such, Zions' request unreasonably seeks information already in Zions' possession.

In addition, Zions has not set forth any reason why the Court should undermine public policy and allow for the discovery of confidential settlement negotiations between BMO and Secure Axcess. *See Pfizer Inc. v. Apotex, Inc.*, 731 F. Supp. 2d 754, 764 (N.D. Ill. 2010) ("[T]he weight of authority bars [a party] from discovering documents relating to or created during settlement negotiations."). Nor has Zions shown why BMO should be conscripted into providing Zions with expert reports and analysis that it could perform by itself. *See Builders Ass'n of Greater Chicago v. City of Chicago,* No. 96-C-1122, 2001 U.S. Dist. LEXIS 14076 at *21 n. 5 (N.D. Ill. Aug. 29, 2001) ("Opportunity enough exists [in the judicial process] for an adversarial exploration of truth in litigation without the necessity of conscripting non-witness researchers into discovery[.]").

Accordingly, BMO respectfully requests that the Court quash the Zions Subpoena in its entirety.

## II. STATEMENT OF FACTS

### A. Secure Axcess' Complaint And Settlement With BMO

On December 16, 2010, Secure Axcess filed a Complaint for patent infringement against thirty-three defendants, including Harris Bankcorp, Inc. and Harris National Association (now BMO) in the United States District Court for the Eastern District of Texas. The Complaint alleged that BMO's online banking websites employed a webpage authentication service that infringed U.S. Patent No. 7,631,191 ("the '191 patent"). On May 9, 2012, Secure Axcess and BMO entered into a Settlement Agreement granting BMO a license to the '191 patent and releasing BMO from all the asserted claims in the litigation. On May 24, 2012, pursuant to the Settlement Agreement, the United States

District Court for the Eastern District of Texas issued an order dismissing all claims against BMO with prejudice.

### B.     Zions' Subpoena

On July 23, 2012, Zions issued a Subpoena to BMO in the United States District Court for the Northern District of Illinois broadly requesting documents and deposition testimony on a number of subjects related to BMO's online banking websites, including information on technologies Zion refers to as "image authentication" and the number of online banking account customers. (*See* Ex. A, Zions Subpoena). The Zions Subpoena further requests detailed, confidential information and expert research, analysis and reports related to the BMO/Secure Axcess Settlement Agreement, including: (i) the methods used for selecting the royalty base and royalty rate; (ii) the factual bases for determining the royalty base and royalty rate; (iii) documents and communications reflecting research and analysis into the value of a license for the '191 patent; and (iv) settlement negotiation documents and communications. BMO served its responses and objections to this Subpoena on August 7, 2012. (Ex. B, BMO Responses and Objections). Despite these objections, Zions made no attempt to narrow the scope of its Subpoena, but continues to demand full compliance by BMO and unfettered access to technology used by BMO to support its online banking websites, the number of BMO banking customers, the terms of the Settlement Agreement and information leading up to the execution of that Agreement.

### III.    LEGAL STANDARD

The scope of material obtainable by a Rule 45 subpoena is not unlimited. *Widmar v. Sun Chem.*, No. 11-C-1818, 2012 U.S. Dist. LEXIS 89253 at *4 (N.D. Ill. June 28,

2012). Under the Federal Rules, issuing courts must quash or modify a subpoena which "requires disclosure of privileged or other protected matter (if no exception or waiver applies) or subjects the recipient to an undue burden." *Id.* In determining whether a subpoena is unduly burdensome, a court weighs a number of factors, including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed." *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, No. 06 C-4623, 2006 U.S. Dist. LEXIS 92351 at *2-3 (N.D. Ill. Dec. 13, 2006).

A subpoena will survive a motion to quash only when it designates topics reasonably calculated to lead to the discovery of admissible evidence. *See Rosales v. Placers, Ltd.*, No. 09-C-1706, 2011 U.S. Dist. LEXIS 23384 at *3-4 (N.D. Ill. Mar. 8, 2011). In addition, the non-party status of a subpoena's recipient is a "significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Id.* at *4. "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Robinson v. Morgan Stanley*, No. 06-C-5158, 2010 U.S. Dist. LEXIS 25073 at *7 (N.D. Ill. Mar. 17, 2010) (citations omitted). For example, the Court may quash a subpoena that requests studies done by non-parties unrelated to the subject matter of the lawsuit or that otherwise call for an unretained expert's opinion. *See* Rule 45(c)(3)(B)(ii) (the court may quash a subpoena that requires the disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."); *Builders,* 2001 U.S. Dist. LEXIS 14076 at *21 n. 5.

Where a subpoena requests documents and testimony regarding settlement negotiations, the Court has stated that "the discovery of settlement negotiations is disfavored in order to protect a party's litigation strategy from being revealed." *Buonauro v. City of Berwyn*, No. 08-C-6687, 2011 U.S. Dist. LEXIS 56194 at *8 (N.D. Ill. May 25, 2011). In balancing the interests between the scope of permissible discovery and the strong public policy in favor of settlement, the Court has appropriately distinguished between allowing discovery of a final settlement agreement and prohibiting discovery of settlement negotiations—noting that a final agreement necessarily incorporates the parties' prior discussions and the disclosure of such an agreement would not have the same chilling effect on a future party's willingness to enter into settlement negotiations. See *Info. Techs. Int'l v. ITI of N. Fla.,* No. 01-C-4668, 2002 U.S. Dist. LEXIS 3645 at *4-5 (N.D. Ill. Mar. 5, 2002); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 369 (D. Ill. 2001).

IV. <u>ARGUMENT</u>

    A. **The Zions Subpoena Improperly Requests Documents And Testimony On The Operation Of BMO's Online Banking Systems And Its Customers That Are Neither Relevant Nor Reasonably Calculated To Lead To The Discovery Of Admissible Evidence**

Zions has not shown how the documents and testimony it has requested regarding BMO's online banking websites are either relevant or reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Evid. 401, 402 (only relevant evidence is admissible); *Rosales*, 2011 U.S. Dist. LEXIS 23384 at *3-4 (a subpoena must be reasonably calculated to lead to the discovery of admissible evidence). Moreover, despite detailed objections served by BMO, Zions never made any attempt to narrow its broad

demands but instead insists on full compliance and unfettered access to BMO's confidential and proprietary information.

For example, Deposition Topics 8 and 12 of the Zions Subpoena request confidential and proprietary information on the "number of BMO Harris online banking account customers having the ability to utilize image authentication" and an "[i]dentification of the products used by BMO Harris for purposes of image authentication." (Ex. A at 10-11.) Document Request No. 1 likewise seeks documents "concerning the method used to derive and the basis for selecting the royalty base," which necessarily includes information regarding the number of BMO online banking customers. (*Id.* at 9.)

In support of these requests, Zions has not set forth any reason why such documents and/or testimony related to the types of online banking technologies used by BMO and the number of BMO customers would be relevant or reasonably calculated to lead to the discovery of admissible evidence in a patent infringement suit to which BMO is no longer a party. *National Claims Management Corp. v. Mercedes-Benz of North America*, 1998 U.S. Dist. LEXIS 492 at *4 (June 15, 1998) (quashing a subpoena that would have forced a non-party to disclose confidential business information unnecessary to support the moving party's case). BMO should not be forced to engage in costly and unnecessary discovery regarding evidence that is neither relevant nor admissible to the pending litigation.

**B.     The Zions Subpoena Improperly Requests Documents and Testimony Regarding The Terms Of The BMO/SecureAxcess Settlement Agreement Already In Zions' Possession**

The Zions Subpoena should be quashed for improperly requesting duplicative documents and testimony on information already in Zions' possession. *See Hollinger Int'l Inc. v. Hollinger, Inc.*, 230 F.R.D. 508, 523 (N.D. Ill. 2005) ("[A] court may limit discovery if, for example, it determines that it is unreasonably cumulative or duplicative, obtainable from another source that is more convenient, less burdensome, or less expensive.").

Deposition Topic No. 1 of the Zions Subpoena requests testimony regarding "the terms of the Settlement Agreement between BMO Harris and Secure Axcess" and several other deposition topics and document requests likewise seek information about the terms of the Agreement. (Ex. A at 10.) However, these requests are wholly unnecessary. The Settlement Agreement (already produced to Zions by the Plaintiff Secure Axcess) plainly sets forth the entire terms of the agreement entered between BMO and Secure Axcess, including (i) the patents licensed; (ii) the products covered; (iii) the amount paid, including the royalty base and royalty rate; (iv) all other representations and warranties encompassed by the agreement, and (v) exhibits listing the number of banking customers using the technology at issue in the case. As such, the documents demanded and proposed Deposition Topics are unnecessarily duplicative of information already in Zion's possession. *See Greer Properties, Inc. v. La Salle Nat'l Bank*, No. 87-C-10983, 1990 U.S. Dist. LEXIS 3846 at *2-3 (N.D. Ill. Apr. 6, 1990) ("The rationale for permitting an independent action for production of documents from a non-party witness

presumes that the documents are not obtainable from a party or through the movant's own efforts.").

The Settlement Agreement is a complete, self-contained document. There is no additional information (whether documents or testimony) that BMO can produce in response to the Subpoena that would alter the terms of the Agreement. The Agreement is what it is, the terms are fixed—the royalty base, rate and amount paid are all stated in the Agreement. In fact, it is unclear how Zions contends any documents or testimony that could be produced would change the meaning of the actual terms of the agreement, which are plain on their face.

<blockquote>C. **The Zions Subpoena Improperly Requests Documents And Testimony Related To Or Created During Settlement Negotiations Without Showing Either Relevance Or A Reason For Disregarding Public Policy**</blockquote>

The Zions Subpoena is additionally improper for requesting documents and testimony related to or created during confidential settlement negotiations between BMO and Secure Axcess. Specifically, under Document Requests No. 1-2, 4 and Deposition Topics No. 2-3, and 6-12, Zions requests information regarding the methodologies and negotiations used to come to the final terms of the Settlement Agreement. (Ex. A at 9-11.) As an initial matter, Zions has not advanced any reason why such negotiations are relevant or reasonably calculated to lead to the discovery of admissible evidence under the Federal Rules of Evidence. *See Info. Tech*, 2002 U.S. Dist. LEXIS 3645 at *4 (denying discovery request for documents setting forth settlement negotiations on grounds of relevancy). As this Court has stated, a settlement agreement is the "culmination of the negotiations" between the parties and "any positions taken by parties

prior to any final agreement are *insignificant*." *White*, 203 F.R.D at 368-69 (emphasis added); *Info. Techs.,* 2002 U.S. Dist. LEXIS 3645 at *4 (allowing discovery of Settlement Agreement but not settlement negotiations as the "final agreement should incorporate all previous discussions.").

Further, even if such settlement negotiations were relevant (which they are not), public policy strongly disfavors the disclosure of such negotiations. The United States District Court for the Northern District of Illinois recognizes a strong judicial policy in favor of allowing parties to engage in an open give and take during settlement negotiations without concern that their negotiations will later be discoverable. As stated by this Court:

> Frank discussion and exchange of information is required to facilitate settlement. Without confidentiality, the discussions and exchange of information necessary to the settlement process may not occur. Compelling the production of documents generated with respect to those discussions and exchanges of information may chill the confidentiality that parties rely on during their settlement negotiations and, in turn, obstruct settlement.

*Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08-C-50078, 2010 U.S. Dist. LEXIS 5284 at *7 (N.D. Ill. Jan. 22, 2010).

Zions has not presented any compelling reasons to disregard these public policy concerns. In fact, as outlined above, having already had access to the final Settlement Agreement between BMO and Secure Axcess, Zions cannot even show that the information and testimony that it seeks is not duplicative of the plain terms of the Agreement itself. This situation is therefore identical to multiple Court decisions which have disallowed discovery into settlement negotiations when discovery of the Settlement

Agreement itself suffices. *See Pfizer,* 731. F. Supp. 2d at 764*; Info. Techs. Int'l.,* 2002 U.S. Dist. LEXIS 3645 at *4-5; *White*, 203 F.R.D. at 369.

       **D.**      **The Zions Subpoena Improperly Requests Information On All Of BMO's Online Banking Systems Capable Of Performing "Image Authentication" And The Number Of Their Users Presenting An Undue Burden**

The Zions Subpoena further presents an undue burden by requesting extensive and invasive discovery on the scope and operation of BMO's online banking websites, including detailed information on the technology BMO has (or had) used relating to what Zions refers to as "image authentication" (while failing to define this term). *See* Rule 45(c)(3)(A)(iv) (a Court must quash a subpoena that subjects a party "to undue burden.").

As examples, Deposition Topic No. 8 of the Zions Subpoena requests information on the number of BMO online banking customers with the ability to use "image authentication" technologies. (Ex. A at 10.) Likewise, Deposition Topic No. 12 requests information on the products used by BMO for purposes of "image authentication." (*Id.* at 11.)

Despite BMO's objections, Zions has failed to appropriately limit the scope of these requests. Taken by their plain terms, Deposition Topics No. 8 and 12 (and related requests in Zions' Subpoena) request documents and testimony on BMO's online banking systems without any limitations as to specific products, the time period in which these products were used or where they were used. (*See* Ex. A at 10-11). Zions fails and refuses to define the term "image authentication" which presents further ambiguities in the scope of the Subpoena and boundaries in which Zion intends to push for discovery. Zions therefore appears to be requesting information on any BMO online banking

product capable of performing "image authentication" used anywhere at any time by anyone. Such requests are both overbroad and unduly burdensome. *See City of Greenville v. Syngenta Crop. Prot.*, No. 11-mc-10, 2011 U.S. Dist. LEXIS 124453 at *11-12 (C.D. Ill. Oct. 27, 2011) (quashing and modifying a subpoena for lack of any time limitations and the unreasonable breadth of documents requested); *Builders*, 2001 U.S. Dist. LEXIS 14076 at *25 (a party "cannot lawfully require a non-party to examine each and every document in its possession, custody or control" under Rule 45(a)).

### E. The Zions Subpoena Improperly Requests Confidential Information And Testimony Protected by the Attorney-Client Privilege and Work Product Doctrine

Notwithstanding such issues of burden, the Zions Subpoena further improperly requests confidential documents and testimony protected by the attorney-client privilege and the work-product doctrine. *See* Fed. R. Civ. P. 45 (the court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter[.]"); Fed. R. Civ. P. 26(b)(3) ("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial or for another party or its representative.").

Nearly the entire Subpoena, including Document Requests No. 1-4 and Deposition Topics 2-3, 6-7 and 9-11 of the Zions Subpoena, demands various categories of documents and testimony directed to: (i) any "research, analysis, investigation or opinion" relating to the value of a license or covenant under the '191 patent; (ii) settlement negotiations between Secure Axcess and BMO; (iii) communications between Secure Axcess and BMO leading to the Settlement Agreement; and (iv) the processes and

factual basis used by BMO to come to the final royalty base and royalty rates set forth in the Settlement Agreement. (*See* Ex. A at 9-11.)

Given the broad scope of these requests, the documents and testimony being sought necessarily include both communications between BMO and its counsel and documents prepared by BMO's counsel for the purposes of advising BMO on the terms of the Settlement Agreement. Such documents and testimony are protected from discovery by the attorney-client privilege and/or work product doctrine. In fact, despite BMO having already raised these objections in its August 6, 2012 responses and objections, Zions has failed to take any action to narrow the scope of its Subpoena to exclude such protected documents and communications.

      F.      **The Zions Subpoena Improperly Requests Expert Reports And Analysis Related To The BMO/Secure Axcess Settlement Agreement**

Finally, the Zions Subpoena is additionally deficient for requesting expert research, reports and analysis done by BMO relating to the terms of the BMO/Secure Axcess Settlement Agreement. *See* Rule 45(c)(3)(B)(ii) (the court may quash a subpoena that requires the disclosure of "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.").

As one example, Document Request No. 3, and related deposition topics of the Zions Subpoena, cover "any research, analysis, investigation or opinion relating to [the] value of a license and/or covenant under the '191 patent, including documents relating to any research, analysis, investigation or opinion regarding an appropriate lump sum payment, royalty rate, or royalty base for a license under the '191 patent." (Ex. A at 9.)

These requests are improper for at least two reasons. First, Zions has not shown how any such studies, investigations or opinions done by BMO would be relevant to Zions' case. Second, Zions appears to be attempting to compel BMO into providing expert opinions and analysis regarding the value of the Secure Axcess patents in order to avoid having to bear the time and expense of developing this information itself. These types of requests for studies done by non-parties have been expressly disallowed in prior Court decisions. *See Builders*, 2001 U.S. Dist. LEXIS 14076 at *24 (quashing subpoena requesting all documents related to any studies, surveys or statistical analysis done by a non-party for relevance and for calling on expert materials).

## V.     CONCLUSION

For the reasons discussed above, BMO respectfully requests that the Court grant its motion to quash.

Dated: September 7, 2012

Respectfully submitted,

/s/s Emily Newhouse Dillingham
Emily Newhouse Dillingham (IL #6290333)
PAUL HASTINGS LLP
191 North Wacker Drive, 30th Floor
Chicago, IL 60606
Telephone: (312) 499-6292
Facsimile: (312) 499-6192
emilydillingham@paulhastings.com

Robert M. Masters
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
Telephone: (202) 551-1700
Facsimile: (312) 551-1705
robmasters@paulhastings.com

Bob Chen
PAUL HASTINGS LLP
4747 Executive Drive

Twelfth Floor
San Diego, CA 92121
Telephone: (858) 458-3023
Facsimile: (858) 458-3123
bobchen@paulhastings.com

***ATTORNEYS FOR NON-PARTY BMO FINANCIAL CORPORATION***